IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

VERA GARNER                                                                    PLAINTIFF

V.                                          1:05CV00040JMM

CORRECTIONAL MEDICAL SERVICES                              DEFENDANT

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is the Motion for Summary Judgment filed by the Defendant. Plaintiff has responded to the motion and the Defendant has replied. For the reasons set forth below, the Motion is GRANTED.

Plaintiff Vera Garner was an inmate housed with the Arkansas Department of Corrections from 2001 through 2004. On June 29, 2003, while she was serving as an Act 309 trustee in the Arkansas County Jail, Plaintiff fell out of the top bunk and injured her knee. She was taken to the emergency room in DeWitt to be evaluated. According to Plaintiff, the emergency room doctor told her she might need surgery. According to the ER records, however, there was no edema, erythema or acute trauma to her knee and surgery was not indicated. She was provided a knee immobilizer and transported back to the ADC on June 30, 2003. (Def.'s Ex. A at p. 10-12).    After returning to the ADC, Plaintiff submitted a sick call requesting to see a doctor for her knee. Plaintiff was seen by LPN Keeling who provided her with a medical restriction for 14 days and crutches. On July 1, 2003, Plaintiff was evaluated by Advanced Nurse Practitioner  Hill. Nurse Hill noted that Plaintiff had a bruised right knee "unstable with 3+ edema and acute pain with even minimal manipulation. . . ." (Def.'s Ex. A at p. 38). She also requested an orthopedist to evaluate and treat Plaintiff's injury. On July 2, 2003, Nurse Hill issued a medical restriction for Plaintiff to receive bed rest and keep her right leg elevated for 14

days.  (Id. at p. 13).

On July 5, 2003, Plaintiff submitted a sick call request inquiring into when she would see a physician.  On July 8, 2003, Dr. J. Roland Anderson, Regional Medical Director for Correctional Medical Services, reviewed Nurse Hill's consultation request and determined that a physician needed to examine Plaintiff.  Dr. Anderson recommended that Plaintiff be seen by Pavel Polskiy, M.D.  On July 14, 2003, Plaintiff was evaluated by Dr. Polskiy.  His notes reflect that she had an injury to her right knee and that she was awaiting an "ortho consult."  (Def's Ex. A at p. 13-14).  Dr. Polskiy did not submit a separate consultation request and no other such request was pending.  Dr. Polskiy requested that Plaintiff return to the clinic in one month for a follow up.  He also renewed her bed rest and leg elevation restrictions.  (Id. at p. 13-14).

On July 27, 2003, Plaintiff submitted a sick call stating that she had not see a specialist. On August 8, 2003, Dr. Polskiy submitted a consultation request for "ortho" with a diagnosis of "possible meniscus tear."  (Id. at p. 39).  On August 12, 2003, Dr. Anderson reviewed Dr. Polskiy's consultation request.  Dr. Anderson requested a copy of Plaintiff's medical notes in order to determine whether the request met the standard of care.

On August 13, 2003, Plaintiff submitted another sick call request relating to her knee. She was seen by Dr. Polskiy on August 20, 2003.  Dr. Polskiy prescribed pain medication for Plaintiff.

On September 14, 2003, Dr. Anderson received Plaintiff's medical records.  After review of the records, Dr. Anderson approved the consultation request.  On September 22, 2003, Plaintiff was evaluated by Dr. S. Pulisetty, an orthopedic specialist.  Dr. Pulisetty opined that Plaintiff suffered from a medial collateral ligament/medial mensical injury to her right knee. He

requested an x-ray, physical therapy and a follow up in three weeks. (Def.'s Ex. A at p. 42). On September 23, 2003, an x-ray of Plaintiff's knee was ordered. The x-ray report stated, "History Twisted knee; right knee; frontal and lateral views of the right knee demonstrate normal joint space width no effusion and no apparent chondrocalcinosis; bony structures are intact and soft tissue are normal in prominence and symmetry." (Def.'s Ex. A at p. 37).

On September 24, 2003, Plaintiff submitted a sick call request for a renewal of ibuprofen and surgery. She was seen on September 26, 2003, by LPN Keeling and issued ibuprofen. (Id. at p. 29). Again on October 3, 2003, Plaintiff submitted a sick call request for a renewal of ibuprofen. She was seen by LPN Keeling and issued ibuprofen. (Id. at p. 30). On October 19, 2003, Plaintiff submitted a sick call request for pain medication and a return appointment with the specialist for surgery. She was seen by LPN Matthews on October 21, 2003. She was issued pain medication and referred to the physician for evaluation. (Id. at p. 31).

On October 29, 2003, Plaintiff was evaluated by Scott Boone, M.D. Dr. Boone issued medical restrictions and completed a consult request form for Plaintiff to have an MRI of her right knee. (Id. at p. 35). On November 4, 2003, Dr. Boone submitted a second consultation request for Plaintiff to be referred back to an orthopedist, either Dr. Pulisetty or Dr. John Lytle. (Id. at p. 36).

On September 11, 2003 and November 10, 2003, Plaintiff requested an interview with a compliance attorney about her medical care. Plaintiff was directed to provide more detail about her accident and cautioned that compliance attorneys do not act as inmate attorneys in lawsuits against the ADC and CMS. (Pl.'s Ex. 14 and 15).

On November 19, 2003, Plaintiff was re-evaluated by orthopedic specialist, Dr. Pulisetty. According to his notes, he discussed arthroscopic surgery with Plaintiff in detail and recommended that the surgery be scheduled.  Dr. Swingle, with CMS, signed off on this report. (Def.'s Ex. A at p. 43).  However, he did not make any recommendation or consultation request.

On December 5, 2003, Dr. Boone examined Plaintiff.  He renewed her medical restrictions and submitted an orthopedic consultation request for arthroscopic surgery.  (Def.'s Ex. A at p. 40).  At Plaintiff's request, she was issued pain medication again on December 17, 2003.

On January 7, 2004, Plaintiff was examined by Dr. John Lytle, an orthopedic specialist. Dr. Lytle opined that Plaintiff had a medial meniscus tear with a previously injured MCL and possibly ACL.  He recommended rehabilitation and arthroscopic surgery in the near future. (Def.'s Ex. A at p. 44).  On January 14, 2004, Dr. Anderson approved the consultation request for Plaintiff's arthroscopic surgery.  Dr. Lytle performed the surgery on January 22, 2004.

In his operative report, Dr. Lytle stated that Plaintiff suffered from an intermeniscal ligament detachment, grade 1 sprain of the anterior cruciate ligament ("ACL"), and grade 2 chondromalacia of the patella.  He described the procedure in detail, including in his report the fact that the ACL was identified.  "[The ACL] was injured, but it remained structurally intact and strong.  It was visualized and probed.  An anterior drawer test under direct vision showed this to be satisfactory in position." (Def.'s Ex. A at p. 45-46).  Dr. Lytle resected the intermeniscal ligament and cleaned the patella.  (Id.).

Dr. Lytle released Plaintiff with orders to use crutches as needed up to 5 days, to perform strengthening exercises and to receive pain medication.  Dr. Lytle had reviewed the

strengthening exercises with the Plaintiff during her visit on January 7, 2004.  Plaintiff was instructed to be very aggressive with her rehabilitation.  (Def.'s Ex. A at p. 44).

After her release from the ADC, Plaintiff began seeing Dr. Randall Lea in Baton Rouge, Louisiana, in May of 2006.  Dr. Lea diagnosed Plaintiff with ACL tear of the right knee.  On June 6, 2006, an MRI showed a complete disruption of Plaintiff's ACL.  (Pl.'s Ex. ).  Dr. Lea ultimately referred Plaintiff to Dr. Gerry Murtagh for surgery on the knee.  Dr. Murtaugh removed the torn ligament in Plaintiff's knee, replaced it with a cadaver part, and continued her on physical therapy.

Plaintiff filed suit against Defendant under 42 U.S.C. § 1983 seeking compensatory damages for physical and emotional suffering and punitive damages.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

To support her § 1983 claim against the Defendant, Plaintiff must show that they were deliberately indifferent to her serious medical needs. *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir.1995). To show deliberate indifference, Plaintiff must demonstrate that she suffered objectively serious medical needs, and the officials actually knew of but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997). Further, Plaintiff must show that there was a policy, custom, or official action that inflicted an actionable injury. *Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir.1993).

Plaintiff has presented evidence of an objectively serious medical need that officials knew of, but there is no evidence that the medical personnel deliberately disregarded those needs. It is true that there was a delay of seven months between Plaintiff's knee injury and the date of her surgery. However, Plaintiff was immediately taken to the emergency room after her

injury, given medication, a knee immobilizer, crutches, allowed to remain on bedrest with her leg elevated for an extensive period of time, and she was examined numerous times by medical personnel including two orthopedic specialists, one of which performed arthroscopic surgery to repair her knee.

The only failure alleged by Plaintiff is that the Defendant did not authorize Plaintiff's arthroscopic surgery sooner. Plaintiff has presented no evidence, however, that this delay was outside of the standard of care which would normally be followed for a patient her age. Regardless, there is no evidence that Defendant's delay, if any, in authorizing Plaintiff's surgery was the result of anything other than negligence. Mere negligence does not rise to a constitutional violation. Dulany, 132 F.3d at 1239. "[D]isagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995). Prison physicians 'do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). More importantly, Plaintiff has not pointed to any policy, custom, or official action by Correctional Medical that resulted in this delay. Therefore, summary judgment in favor of Correctional Medical is warranted in this case.

Defendant's Motion for Summary Judgment (Docket # 30) is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED this 3rd day of October 2007.

_____
James M. Moody
United States District Judge